**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER BURDISS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHRIS CHAMBERLAIN, et al., )<br>)<br>Defendants. ) | No. 4:21-CV-1516RLW |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of self-represented plaintiff Christopher

Burdiss, a civil detainee at the Sexual Offender Rehabilitation and Treatment Services Center

("SORTS") in Farmington, Missouri, for leave to commence this civil action without payment of

the required filing fee. ECF No. 3. Having reviewed the motion and the financial information

provided in support, the Court has determined plaintiff lacks sufficient funds to pay any portion of

the filing fee. As a result, plaintiff will be granted leave to proceed *in forma pauperis*. *See* 28

U.S.C. § 1915. Additionally, for the reasons discussed below, the Court will dismiss this action as

legally frivolous and for failure to state a claim upon which relief may be granted.

### The Complaint

Plaintiff is in the custody of the Missouri Department of Mental Health ("MDMH") and is

being detained at SORTS. On December 29, 2021, plaintiff filed this action pursuant to 42 U.S.C.

§ 1983 against nine defendants in both their individual and official capacities: (1) Chris

Chamberlain, Director of Security; (2) Misty Kindle, Psychiatric Nurse Practitioner; (3) Allen

Smith, Senior Security Support and Care Aid; (4) Stacey Gegg, Social Worker; (5) Rebecca

Deason, Counselor; (6) George Killian, Director of Operations; (7) Denise Hacker, Chief

Operating Officer; (8) SORTS; and (8) MDMH. ECF No. 1. In the caption of the complaint, plaintiff indicates he is bringing his claims "[o]n behalf of all SORTS patients [s]imilarly situated."

Plaintiff states that on October 29, 2021, defendant Chamberlain "led the Security team in conducting a Total Ward Search of Hoctor 4." *Id.* at 7.  During the search, a piece of a broken cup was found in plaintiff's room. Plaintiff broke a cup a few days prior to the search and believed he had found and turned in all the broken pieces. *Id.*

On October 30, 2021, defendant Chamberlain issued plaintiff a "Behavior Worksheet" for "Possession of and/or Fashioning a Weapon/Dangerous Contraband," and defendants Kindle, Smith, Gegg, and Deason reduced him "to the Red privilege level from the Green privilege level[.]" *Id.* at 8. The reduction "restricted or denied" him "canteen privileges, access to the Ward DVD player, access to the Ward PlayStations, access to the facility fitness center, access to personal art supplies and a significant reduction in personal property allowances." *Id.* Plaintiff asserts he had "no opportunity to contest guilt," "prepare a defense," or "review the evidence against him." *Id.*  Plaintiff does indicate in his complaint, however, that SORTS has a grievance procedure and he presented the issues in this instant matter through that grievance system. *Id.* at 2-3.

On December 2, 2021, plaintiff met with defendants Kindle, Smith, Gegg, and Deason "to request the Behavior Worksheet be dismissed and expunged, and that he be returned to the green privilege level." *Id.* at 8. Plaintiff was told that "Behavior Worksheets are a therapeutic tool, cannot be dismissed and expunged, and are not subject to Due Process." *Id.*  Plaintiff alleges defendants Killian and Hacker "as direct supervisors" should have trained their staff on due process requirements.  *Id.* Plaintiff further alleges all defendants "engaged, and continue to engage, in a

conspiracy to deny Due Process rights guaranteed by the Fourteenth Amendment to the United States Constitution." *Id.* at 9.

For relief, plaintiff requests punitive damages due to an "active conspiracy," a declaration that Behavior Worksheets are a violation of due process, and an order compelling defendants to establish a "multilayer appeal process." *Id.*

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that a court must accept factual allegations in the complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be

considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complainants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded). In addition, affording a self-represented complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Discussion

Having carefully reviewed and liberally construed plaintiff's allegations, and for the reasons discussed below, the Court must dismiss plaintiff's claims.

### A. Claims against MDMH, SORTS, and Defendants in their Official Capacities

All named defendants are alleged to be employed by either the MDMH or SORTS, which are departments or subdivisions of the State of Missouri. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id. See also*

*Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) ("a state is not a person for purposes of a claim for money damages under § 1983").

In addition, a claim against the State of Missouri is barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on a nonconsenting State from lawsuits brought in federal court by a State's own citizens or the citizens of another State. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a State waives its immunity to suit in federal court. *Id*. at 65. A State will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987).

Neither exception applies in this case. First, there is no congressional abrogation of Eleventh Amendment immunity. Plaintiff brings this action pursuant to § 1983 and the United States Supreme Court has determined § 1983 does not revoke the States' Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). Second, the State of Missouri has not consented to the suit. Specifically, the State's statutory waiver of immunity does not include the type of claims made by plaintiff in this case. *See* Mo. Rev. Stat. § 537.600.

Therefore, because a state is not a "person" for the purposes of § 1983 and a suit against the state is barred by the Eleventh Amendment, plaintiff's claims against the MDMH, SORTS, and all defendants in their official capacities must be dismissed under 28 U.S.C. § 1915(e)(2)(B). *See Murrell v. Sheets*, 2014 WL 3818282, at *2 (E.D. Mo. Aug. 4, 2014) (dismissing official capacity claims against SORTS employees); *Johnson v. Blake*, 2012 WL 3064264, at *2 (E.D. Mo. July 27, 2012) (dismissing official capacity claims against MDMH employees).

**B. Individual Capacity Claims against Defendants**

*1. Due Process*

Plaintiff alleges he was not given an opportunity to contest his guilt before being issued a Behavior Worksheet, and was inappropriately denied dismissal or expungement of the sanction. Plaintiff admits that SORTS has a grievance procedure, however, he was able to present his complaints as stated here via the grievance system, and he had an opportunity to meet with defendants Kindle, Smith, Gegg, and Deason to request dismissal and expungement of the

6

Behavior Worksheet. *See* ECF No. 1 at 2-3, 8. The Behavior Worksheet caused plaintiff to be "restricted or denied" canteen privileges, personal property, including art supplies, and access to SORTS's DVD player, PlayStation, and fitness center. Plaintiff does not state how long such disciplinary restrictions were imposed.

An involuntarily committed patient such as plaintiff is not a prisoner, but "his confinement is subject to the same safety and security concerns as that of a prisoner." *Revels v. Vicenz*, 382 F.3d 870, 875 (8th Cir. 2004). "[B]ecause an involuntarily committed [patient] is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply." *Id.* The rights of civilly committed individuals, as well as pretrial detainees, arise under the Fourteenth Amendment.

In *Smith v. Copeland*, 892 F. Supp. 1218 (E.D. Mo. 1995), a pretrial detainee brought a § 1983 action against jail officials, asserting claims for, among other things, placing him in solitary confinement for violations of institutional discipline without due process. The Court concluded that particular procedural mechanisms were not required to impose solitary confinement on a pretrial detainee. The Court reasoned that, in light of the rationale expressed in *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979), "there exists no basis in the Due Process Clause or elsewhere in the Constitution for requiring that discipline not be imposed upon a pretrial detainee for violations of institutional discipline without the particular procedural mechanisms invoked by plaintiff here, including notice, a hearing or specific findings, a right to counsel, and an independent investigation of the charges." *Smith*, 892 F. Supp. at 1233. "Only if . . . the restriction or condition is 'arbitrary or purposeless' – is the action a punishment that violates Due Process if inflicted upon detainees." *Id*. at 1227 (quoting *Wolfish*, 441 U.S. at 539).

The Supreme Court in *Youngberg v. Romeo*, 457 U.S. 307 (1982) has also made clear that when evaluating whether a civil detainee's due process rights have been violated, in deciding whether the care provided is adequate or whether the restraint is reasonable, the courts must defer to the decisions of professionals:

> the decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision made by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible did not base the decision on such judgment.

*Youngberg*, 457 U.S. at 323. In short, those responsible for a civil detainee's care and treatment do not have to employ the best possible alternative or use the least restrictive means available. *See Thielman v. Leean*, 140 F.Supp.2d 982, 992 (W.D. Wisc. 2001) ("so long as [the] choice was made by a professional, it is presumptively valid even if it is not the best alternative"); *Collington v. Milwaukee County*, 163 F.3d 982, 990 (7th Cir. 1998) (mere disagreement about which of many professionally acceptable treatment plans should have been implemented does not make out a substantive due process claim).

Plaintiff's conduct violation for breach of security is described as "Possession of and/or Fashioning a Weapon/Dangerous Contraband." Defendants' actions in issuing plaintiff a Behavior Worksheet and reducing him to the "red privilege level" as a "therapeutic tool" cannot be found to be "arbitrary or purposeless" because such actions are part of "maintaining institutional security and preserving internal order and discipline," which the Supreme Court has identified as "essential goals that may require limitation or retraction of retained constitutional rights." *Wolfish*, 441 U.S. at 546-47. As such, defendants should be given "wide-ranging deference" in adopting and executing policies that they judge are needed to preserve institutional security. *Id.* at 547-48. *See also Coffman v. Blunt*, No. 4:05-CV-00373-RWS, 2005 WL 1474091, at *3 (E.D. Mo. June 22, 2005) (allegations which "fall into the category of mere disagreement over how civil detainees

8

should be cared for and treated and do not indicate a complete lack of professional judgment necessary to show a due process claim . . . should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)").

Accordingly, the Court finds no basis in the Due Process Clause for requiring that defendants not discipline plaintiff for a security conduct violation without the procedural mechanisms of notice and hearing or an opportunity for expungement. Plaintiff's claim is legally frivolous or fails to state a claim upon which relief may be granted, or both.

### 2. *Limited Access to Personal Property*

To the extent plaintiff alleges a constitutional violation for restricting or limiting him access to his personal property, such a claim must also be dismissed. Persons committed to the state's custody by means of a civil proceeding retain liberty interests in essential care items such as adequate food, shelter, clothing, and medical care. *See Youngberg*, 457 U.S. 307; *see also Kennedy v. Schafer*, 71 F.3d 292, 294 (8th Cir. 1995) (noting that involuntarily committed persons unquestionably have a protected liberty interest in a safe and humane environment).

Here, plaintiff does not allege he has been denied any essential care items. To the contrary, he alleges a denial of access to facility-owned items, such as a DVD player, video games, and fitness equipment, his personal art supplies, and unidentified "canteen" items. These are non-essential items and the Court cannot find that any such denial or restriction rises to the level of a violation of his constitutional rights.

Moreover, although the due process clause may be implicated when a detained individual suffers a loss of property, if the taking of property is intentional and the state provides an adequate post-deprivation remedy, there is no violation of due process. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate,

9

postdeprivation remedy); *see also McGee-El v. Hartegan*, 2008 WL 5071107, at \*2 (E.D. Mo. Nov. 24, 2008) ("There is no cause of action under 42 U.S.C. § 1983 for unconstitutional taking of personal property where the state provides an adequate postdeprivation remedy."). In other words, if the state provides an adequate remedy, plaintiff has no civil rights claim under § 1983. The State of Missouri provides the post-deprivation remedy of replevin for the recovery of personal property, Mo. R. Civ. P. 99.01-99.15, and a common-law remedy for conversion. *Hardesty v. Mr. Cribbin's Old House, Inc.*, 679 S.W.2d 343, 347 (Mo. Ct. App. 1984). *See also Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 814 (Mo. Ct. App. 1982).

Because plaintiff has failed to allege a deprivation of a constitutional right and the state provides a postdeprivation remedy for any unconstitutional taking of his personal property, the Court finds his claims against the defendants related to the denial or restriction of state-owned property or personal property should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

3. *Conspiracy*

Plaintiff asserts all defendants have "engaged, and continue to engage, in a conspiracy to deny Due Process rights guaranteed by the Fourteenth Amendment to the United States Constitution." To state a § 1983 conspiracy  claim against a defendant, the plaintiff must show the defendant conspired with others to deprive him of a constitutional right, at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy, and that the overt act injured the plaintiff. *Askew v. Millard*, 191 F.3d 953, 957 (8th Cir. 1999). A plaintiff must allege with "sufficient particularity" and demonstrate with "specific material facts" that the alleged conspirators reached some agreement and worked together. *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988). Plaintiff must also allege "an actual deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Askew*, 191 F.3d at 957. Because

the Court has found that plaintiff's due process and deprivation of property claims do not establish

constitutional violations and he has not alleged with particularity specific facts demonstrating an

actual agreement between the defendants, plaintiff's § 1983 civil conspiracy claim must also be

dismissed for failure to state a claim.

4.   *Allegations against Direct Supervisors*

Plaintiff alleges defendants Killian and Hacker are liable as "direct supervisors" and

"should have known[] that they are responsible for training the staff in their facilities" regarding

due process. To any extent plaintiff is alleging defendants Killian and Hacker are liable solely

because they held administrative or supervisory positions, such claims are also subject to dismissal.

*See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (*respondeat superior* theory inapplicable in

§ 1983 cases). A supervisor is liable for the actions of his subordinates under § 1983 only if he

personally participates in the alleged unconstitutional conduct, or when there is a causal connection

between his actions and the alleged constitutional deprivation.  *See Glick v. Sargent*, 696 F.2d 413,

415 (8th Cir. 1983) (warden must play a personal role in the disciplinary process; he cannot be

held liable for the outcome of the process).  Plaintiff has failed to plead specific facts establishing

an actual link or connection between these defendants and the alleged constitutional violation.

Thus, plaintiff fails to state a claim against defendants Killian and Hacker.

5. *Claims Brought on Behalf of All SORTS Patients*

Plaintiff's complaint is also deficient in that he appears to attempt to bring

claims on behalf of all detainees at SORTS. In the caption of the complaint, plaintiff indicates he

is bringing his claims "[o]n behalf of all SORTS patients [s]imilarly situated." A plaintiff "must

assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or

interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). A person must be litigating

11

an interest personal to him. *See Lewis v. Lenc–Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986) (stating that non-lawyers may only represent themselves because "an individual may appear in the federal courts only *pro se* or through counsel"). As such, plaintiff may not bring claims on behalf of other detainees, must allege a personal loss or injury, and lacks standing to assert claims regarding the mistreatment of other individuals. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). Therefore, to the extent plaintiff brings his claims on behalf of other SORTS residents, the complaint fails to state a claim against defendants.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 3] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 2] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim and/or for legal frivolousness. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this <u>11th</u> day of January, 2022.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**